**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| WAWANESA GENERAL INSURANCE COMPANY, a California corporation as subrogee of SANDY ASCH,<br><br>                              Plaintiff,<br>vs.<br>APPLICA CONSUMER PRODUCTS, INC., WHICH WILL DO BUSINESS IN CALIFORNIA AS FLORIDA APPLICA CONSUMER PRODUCTS, INC.; and DOES 1-20, inclusive,<br><br>                              Defendants. | CASE NO. 06cv1781 WQH (NLS)<br><br>**ORDER** |

HAYES, Judge:

The matters before the Court are (1) Motion in Limine No. One (Doc. # 24) filed by Plaintiff Wawanesa General Insurance Company; (2) Motion in Limine No. Two (Doc. # 25) filed by Plaintiff Wawanesa General Insurance Company; and (3) Cross Motion in Limine Nos. 1-4 (Doc. # 26) filed by Defendant Applica Consumer Products, Inc.

### **Background**

On July 21, 2006, Plaintiff initiated this action by filing the Complaint in the Superior Court of California, County of San Diego. *Not. of Removal,* p. 11. On September 5, 2006, Defendant removed the Complaint to this Court (Doc. # 1). The Complaint alleges that on or about January 28, 2005, an electric toaster/oven (the "Toaster/Oven"), sold under the trade name of Black and Decker, and manufactured and distributed by Defendant, caused a fire in

the residence of Plaintiff's insured, Sandy Asch. *Complaint,* ¶ 11. The Complaint alleges that "[a]s a result of the fire caused by the toaster/oven, [Asch's residence] sustained damages in the amount of $266,748.45." *Id.,* ¶ 13. The Complaint alleges that Asch made a claim to Plaintiff pursuant to the terms and conditions of her insurance policy with Plaintiff, thereby obligating Plaintiff to pay the amount of $267,748.45 to and on behalf of Asch. The Complaint alleges that the Toaster/Oven "was defective in that the designs of various components of the toaster/oven were defective." *Id.,* ¶ 17. The Complaint alleges that "[a]s a proximate result of the defective design, Wawanesa's insured's residence was damaged and pursuant to the policy Wawanesa became obligated to and did pay to and on behalf of their insured a total $267,748.45." *Id.,* ¶ 22. The Complaint alleges the following causes of action: (1) Strict Products Liability (Defective Design); and (2) Subrogation.

On May 19, 2008, the Court held a pretrial conference where the Court set the jury trial for November 18, 2008 (Doc. # 17).

On August 22, 2008, Plaintiff filed two Motions in Limine. On August 22, 2008, Defendant filed four Cross-Motions in Limine. On September 5, 2008, Defendant filed Responses in Opposition to Plaintiff's Motions in Limine (Docs. # 28, 29). On September 5, 2008, Plaintiff filed a Response in Opposition to Defendant's Motions in Limine (Doc. # 30). On September 12, 2008, Plaintiff filed a Reply to the Responses in Opposition to Plaintiff's Motions in Limine (Doc. # 31). On September 12, 2008, Defendant filed Replies to Plaintiff's Response in Opposition to Defendant's Motions in Limine (Docs. # 32, 33, 34, 35).

On October 10, 2008, the Court heard oral argument on the Motions in Limine (Doc. # 36).

**Standard of Review**

Rule 702 of the Federal Rules of Evidence provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. The trial judge must find that expert testimony is "properly grounded, well-reasoned and not speculative before it can be admitted." Fed. R. Evid. 702, Advisory Committee Notes (2000); *see Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 597 (1993). The proponent of the expert testimony has the burden of proving the factual prerequisites necessary to the admissibility of expert testimony. *See Daubert*, 509 U.S. at 597.

Trial courts serve as gatekeepers, evaluating proposed expert testimony for the expert's qualifications, reliability, and relevance. *Daubert,* 509 U.S. at 589-590. The trial court must determine (1) whether the proposed expert is qualified to testify as an expert by knowledge, skill, experience, training or education, and (2) whether the reasoning or methodology underlying the proposed expert's opinion is reliable and relevant. *Id.* at 589-594. In determining whether expert testimony is reliable, *Daubert v. Merrell Dow Pharmaceuticals (Daubert II)*, 43 F.3d 1311, 1316-1317 (9th Cir. 1995), advised trial courts to consider whether the theory or technique employed by the expert is generally accepted in the scientific community; whether it has been subject to peer review and publication; whether it can be and has been tested; and whether the known or potential rate or error is acceptable. However, the trial judge's reliability inquiry is "flexible," and therefore trial courts can and should consider other factors not specifically mentioned by the United States Supreme Court in *Daubert*. *Daubert*, 509 U.S. at 594.

"Trial courts must exercise reasonable discretion in evaluating and in determining how to evaluate the relevance and reliability of expert opinion testimony." *United States v. Alatorre*, 22 F.3d 1098, 1102-03 (9th Cir. 2000). A trial judge has "considerable leeway" in deciding not only "how to go about determining whether particular expert testimony is reliable," but also in deciding whether the testimony is reliable. *Kumho Tire*, 509 U.S. at 153. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert,* 509 U.S. at 596. "Rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702, Advisory Committee Notes to the 2000 Amendments.

## Analysis

**I.     Plaintiff's Motions in Limine**

    A.    <u>Plaintiff's Motion in Limine # 1 - Regarding April 28, 2008 Ignition Report</u>

Plaintiff moves to exclude a supplemental report produced on April 28, 2008 (the "April 28 Report") and any testimony based on the April 28 Report. The April 28 Report was based on an experiment involving radiant heat and ignition tests by Defendant's expert, Ron Liem. In the April 28 Report, Liem reported that "he conducted tests on combustible materials and that the temperature in the toaster oven was not high enough to ignite any known material." *Mot. in Limine # 1,* p. 2. Plaintiff contends that the April 28 Report should be stricken because it is unreliable within the meaning of Rule 702 of the Federal Rules of Evidence and *Daubert,* 509 U.S. 579.[1] Plaintiff contends that the April 28 Report is unreliable for the following reasons: (1) Liem made the conclusions in the April 28 Report without establishing that his testing had been subject to peer review and publication, and without establishing the potential rate of error for his testing; (2) Liem did not test the other types of combustible material located on the counter near the Toaster/Oven; and (3) Liem's testing was incomplete because it only tested temperatures without testing whether actual materials would ignite.

Defendant contends that the April 28 Report is reliable. Defendant contends that it did not test other types of combustible materials because the only material identified by Plaintiff's experts as the initial "fuel for the fire" was the Corian countertop in Asch's kitchen. Defendants contend that without evidence of other combustible materials in or around the subject Toaster/Oven, there was nothing more for Liem to test. Defendant also contends that it would be irrelevant for Liem to determine if any material could be ignited by the radiant heat generated by the Toaster/Oven since the Corian countertop was the only material identified by Plaintiff's experts as being the first material ignited. Regarding Plaintiff's contention that

---

[1] Plaintiff's Motion in Limine also contends that the April 28 Report should be stricken on grounds that it was untimely because it was not produced in compliance with Rule 26 of the Federal Rules of Evidence and this Court's May 18, 2007 scheduling order. However, at oral argument, Plaintiff's counsel withdrew the objection to the admissibility of the April 28 Report on timeliness grounds.

Liem's test was incomplete because it only tested temperatures, Defendant states that Liem was attempting to verify what external temperatures were generated by radiant heat from the Toaster/Oven in order to ascertain if the radiant heat would in fact ignite the Corian countertop. Defendant contends that the "alleged defect was identified at deposition (a fused switch), the mechanism for heat generation was identified (radiant heat at a set temperature), and the first material ignited (Corian) was also identified." *Opp. to Pltf's Mot. in Limine # 1,* p. 12-13. Defendant contends that in reaching the results reported in the April 28 Report, Liem coupled all of these facts in conducting his test, which makes the April 28 Report "extremely reliable, and beneficial to the trier of fact." *Id.* at 13.

Plaintiff objects to Liem's testing on grounds that he did not test other types of combustible material near the Toaster/Oven; and that he only tested temperatures without testing if actual materials would ignite. The Court has considered Plaintiff's objections and concludes that Plaintiff's objections go to the weight to be given to the April 28 Report by the trier of fact. The Court cannot conclude that the April 28 Report is so lacking as to render it unreliable, as opposed to simply worthy of cross-examination. The Court also finds that the April 28 Report is relevant. Plaintiff's Motion in Limine # 1 is DENIED without prejudice.

B.   <u>Plaintiff's Motion in Limine # 2- Regarding Ron Liem's Testimony</u>

Plaintiff moves to preclude Liem from testifying at trial regarding other potential sources of the fire, such as appliances and/or food cooking on the stove, on grounds that the testimony is unreliable within the meaning of Rule 702 and *Daubert.* Plaintiff moves to exclude this testimony for the following reasons: (1) Liem has made his conclusions without establishing whether the testing upon which he bases his conclusions has been subject to peer review and publication, and without establishing the potential error rate of his testing; (2) Liem did not test the other types of combustible material located on the counter such that his opinions are conclusory, not supported by scientific or research evidence, and are speculative; and (3) Liem's investigation was not done in accordance with the basic principles of National Fire Protection Association ("NFPA") 921, entitled "A Guide for Fire and Explosion Investigations." Specifically, Plaintiff contends that Liem cannot identify the specific

1  component or components in other appliance that he believes are the ignition source of the fire,
2  what items were ignited by the stove, or that the stove was still on after Asch finished cooking
3  on it.

4  Defendant contends that Liem, in accordance with NFPA 921, did consider other
5  appliances as possible ignition sources. Defendant emphasizes Liem's testimony that "[i]f the
6  plaintiff's claim is that the origin is at the location of the toaster oven, then this blender and
7  coffee maker, due to their close proximity and extensive damage, become the leading candidate
8  as a cause of the fire and cannot be ruled out." *Opp. to Pltf's Mot. in Limine # 2,* p. 6.
9  Defendant contends that Liem could not have tested these other appliances because they were
10 not collected and preserved by Plaintiff. Defendant contends that the photographs of Plaintiff's
11 own expert, Ron Ablott, establish that the stove remained "on" after Ash was cooking.
12 Defendant contends that Liem did identify the first material ignited, as evidenced by his
13 deposition testimony that the material that was first ignited was "[t]he food in the pan." *Id.* at
14 8.

15 The parties dispute whether Liem's failure to test other types of combustible material
16 located near the Toaster/Oven renders Liem's testimony regarding alternative source of the fire
17 unreliable, and whether Liem failed to comply with NFPA 921 by failing to identify the first
18 material ignited and consider other possible ignition sources. The Court concludes that the
19 parties' dispute goes to the weight to be given to Liem's testimony by the trier of fact. After
20 considering Plaintiff's objections, the Court cannot conclude that Liem's testimony is so
21 lacking as to render it unreliable, as opposed to simply worthy of cross-examination. The
22 Court also finds that Liem's proposed testimony is relevant. Plaintiff's Motion in Limine # 2
23 is DENIED without prejudice.

24 ///
25 ///
26 ///
27 ///
28 ///

**II.     Defendant's Motions in Limine**

    A.     <u>Defendant's Motion in Limine # 1 - to Exclude Testimony of Plaintiff's Expert Frank Hsu</u>

Defendant contends that the proffered expert opinion of Frank Hsu, who has been offered by Plaintiff to support its contention that a defective condition in the Toaster/Oven was the cause of the fire, is unreliable and speculative, and therefore should be excluded.[2] Defendant contends that the specifics of Hsu's theory have been a "moving target" because Hsu initially stated that he was unable to determine the "exact failure mode of the toaster oven," and later stated that a defect in the door switch of the toaster/oven likely caused the fire. *Mot. in Limine # 1,* p. 9-10. Defendant contends that the factual basis for Hsu's determination that there was a defect in the door switch is insufficient because the sole basis for his opinion is his "observations with respect to the damage pattern present on the surface of those contacts." *Mot. in Limine # 1,* p. 18-19. Defendant contends that Hsu's opinion is not supported by relevant test data because he could have, but did not review any data obtained by Underwriter's Laboratories ("UL") from safety testing performed on the model line for the Toaster/Oven. Defendant also contends that Hsu's tests attempted to burn different combustible materials that were arbitrarily positioned next to the Toaster/Oven with the radiant heat emitted from the toaster oven while at a setting of 500°F. Defendant contends that this testing is not supported by the facts that have been established during discovery because "[n]owhere in the record is it stated that Ms. Asch was operating the subject toaster oven at a temperature setting of 500°F," and "Ms. Asch did not testify that she left any sort of paper material or cotton material, or any other type of combustible material for that matter, resting on the toaster oven's door before leaving her house on the day of the fire." *Mot. in Limine # 1,* p. 13. Defendant contends the methodology used by Hsu does not meet the standards for investigating fires set forth in NFPA 921 because Hsu was initially unaware of the scope of his assignment before embarking on his investigation, Hsu initially testified that he was not

---

[2] At oral argument, Defendant also objected to the admissibility of Hsu's July 2008 report on timeliness grounds. The Court declined to consider Defendant's objection to Hsu's July report on timeliness grounds because Defendant raised the issue for the first time in its Reply to the Motion in Limine.

1 able to identify a first material ignited, and although Mr. Hsu speculates that the first material
2 ignited would have been a combustible household material, "he does not reference any facts
3 to show the type and form of the material that he believes served as the first material ignited
4 in this fire." *Mot. in Limine # 1,* p. 16.  Defendant contends that Hsu is a mechanical engineer,
5 who does not possess any work related experience, specialized knowledge or training with
6 respect to the manufacturing of electric appliances, or in designing or evaluating the safety of
7 a design as it relates to electric appliances or toaster ovens.

8       Plaintiff contends that Hsu's opinion is consistent with NFPA 921.  Plaintiff contends
9 that Hsu was initially aware of the scope of his assignment as evidenced by his testimony that
10 the initial assignment was to examine the Toaster/Oven involved in the incident to determine
11 if there was any evidence to indicate that the Toaster/Oven was the ignition source, and that
12 the subsequent assignment was to determine the cause of the ignition.  Plaintiff contends that
13 there is a factual basis for Hsu's determination that there was a defect in the door switch based
14 on his observation that the two contact points on the switch were melted together, which kept
15 the toaster on despite the door being open.  Plaintiff contends that Hsu did identify the first
16 material ignited, as evidenced by his testimony that often in fires, the first ignition source is
17 destroyed and an investigator may have to determine a more broad type of material as the first
18 ignition source.  Plaintiff contends that Hsu is qualified as an expert because he has a Ph.D.
19 in the subject major of combustion and fire, is a licensed mechanical engineer, and is a
20 certified fire and explosion investigator, has testified in four matters that involved electrical
21 appliances, and has 11-12 years of experience as an expert related to the investigation of fires
22 and has investigated hundreds of cases involving an electrical appliance, including as many
23 as five that involved toaster/ovens.

24       Defendant objects to the reliability of Hsu's testimony on grounds that Hsu did not
25 review any UL data, failed to comply with the standards articulated in NFPA 921, did not have
26 a sufficient factual basis for determining that there was a defect in the door switch, and failed
27 to comport his tests with facts established in discovery (namely the temperature setting of the
28 Toaster/Oven and the combustible materials located near the Toaster/Oven).  However, these

objections go to the weight to be given to Hsu's testimony by the trier of fact. After considering Plaintiff's objections, the Court cannot conclude that Hsu's testimony is so lacking as to render it unreliable, as opposed to simply worthy of cross-examination. The Court also finds that Hsu's proposed testimony is relevant and that Hsu is qualified to testify as to the cause of the fire. Defendant's Motion in Limine # 1 is DENIED without prejudice.

  B. <u>Defendant's Motion in Limine # 2 - to Exclude Testimony of Plaintiff's Expert Ron Ablott</u>

Defendant moves to exclude the testimony of cause and origin investigator Ron Ablott. Defendant contends that Ablott "was the only person to perform an investigation at the scene, to collect data, take photographs and to secure evidence." *Mot. in Limine # 2,* p. 8. Defendant contends that Ablott opines at his deposition that the Toaster/Oven malfunctioned and generated radiant heat that resulted in the ignition of the Corian countertop, but that none of his reports ever identified the first material ignited. Defendant contends that Ablott's opinion is unreliable because he did not measure the countertop area where the Toaster/Oven had been located, he did not diagram the presence of a coffee maker or blender on the counter, and he was not even aware of the presence and use of an adapter on the outlet used by the Toaster/Oven and coffee maker. Defendant also contends that Ablott's opinion is unreliable because he labeled the front left burner on the stove top as being in the "off" position, despite a photograph clearly indicating that the left front burner was left in the "on" position.

Plaintiff contends that, contrary to Defendant's assertion, Ablott was not the only person to perform an investigation at the scene and collect data such as photographs because the San Diego Fire Department conducted an investigation and took many photographs at the scene. Plaintiff contends that, pursuant to NFPA 921, the diagrams which Ablott produced did not need to be made to scale, and that the countertop could not be measured because it was no longer whole after the fire. Plaintiff contends that Ablott did not consider the coffee maker as a potential ignition source based on his testimony that "when he spoke to Sandy Asch she did not mention the presence of a coffee maker in the vicinity of where it was determined the fire originated." *Opposition to Dft's Motion in Limine # 2,* p. 8. With respect to Defendant's contention that the control knob on the left burner of the stove in the Ash kitchen may have

1   was left in the "on" position, Plaintiff states that "Mr. Ablott explained that he probably moved
2   the kno[b] himself to see if it worked and then inadvertently left it in a different position than
3   it was originally when he photographed it." *Id.*

4       Defendant contends that numerous deficiencies, from the failure to identify the first
5   material ignited in compliance with NFPA 921 to labeling the control knob on the left stove
6   burner as "off," in Ablott's investigation make his testimony unreliable. However,
7   Defendant's objections to Ablott's investigation go to the credibility of Ablott's testimony, and
8   are therefore more properly considered by the jury in weighing his testimony. After
9   considering Plaintiff's objections, the Court cannot conclude that Ablott's testimony is so
10  lacking as to render it unreliable, as opposed to simply worthy of cross-examination. The
11  Court also finds that Ablott's proposed testimony is relevant. Plaintiff's Motion in Limine #
12  2 is DENIED without prejudice.

13      C.    <u>Defendant's Motion in Limine # 3 - to Exclude Testimony Concerning Any Alleged Defect with the Toaster Oven or, in the Alternative, for an Adverse</u>
14           <u>Inference Jury Instruction</u>

15      Defendant contends that "the following acts and omissions on the part of the plaintiff
16  constitute spoliation of evidence:" (1) Defendant was not afforded the opportunity to inspect
17  the fire scene before evidence was destroyed, and "[t]he unilateral inspection of the fire scene
18  performed by the plaintiff was grossly inadequate with regard to their legal duty to document
19  and record material evidence;" (2) the original post-fire condition of the Toaster/Oven, its
20  temperature control and its component parts were not documented or recorded by Plaintiff's
21  experts, and the Toaster/Oven was not adequately preserved by Plaintiff after it was removed
22  from the scene; and (3) the original post-fire condition of the gas stove top controls were not
23  properly documented by Plaintiff. *Mot. in Limine # 3,* p. 2-3. Defendant contends that
24  evidence of the fire scene is relevant to the issues in this case, "and not taking appropriate
25  measures to protect the integrity of the evidence knowing that litigation is going to ensue can
26  only lead to an egregious result." *Id.* at 10. Defendant contends that the evidence concerning
27  the Toaster/Oven's temperature control and component parts, and the gas stove top controls
28  should be "be stricken or, alternatively, an adverse inference jury instruction given." *Id.*

With respect to Defendant's contention that the fire scene was not preserved, Plaintiff responds that the Asch kitchen was sufficiently documented after the fire and before the evidence was destroyed. Plaintiff contends that, in addition to Ablott, the San Diego Fire Department conducted an investigation, and took many photographs of the scene and issued a report that Defendant reviewed. Plaintiff contends that "there is ample evidence available that allows the defendant to determine the post-fire condition of the toaster oven" based on Asch's testimony that she would typically cook chicken nuggets (which she cooked in the Toaster/Oven on the night of the fire) at 300 degrees and Hsu's testimony that he observed the setting to be at 400 degrees. Regarding Defendant's contention that the gas stove was properly documented, Plaintiff contends that Asch has made no reference to the left front burner, that Ablott probably moved the knob himself to see if it worked and inadvertently left it in a different position, and that regardless, "Mr. Ablott repeatedly testified that the burn patterns and other evidence do not support the theory of the fire originating at the stove." *Opp. to Dft's Mot. in Limine # 3*, p. 4. Plaintiff emphasizes that the evidence in this case was not totally destroyed and was available for inspection by Defendant, and that there were various photographs available for Defendant's inspection of the Toaster/Oven and the scene as a whole. Plaintiff also states that Defendant cannot claim prejudice because Defendant has been able to conclude where the fire started to a reasonable degree of engineering and scientific certainty and Defendant's expert "was not deprived of inspecting the toaster oven and based on his inspection concluded that it, without question, could not have been the cause of the fire." *Id.* at 7.

Defendant objects to the admissibility of any evidence or expert testimony concerning any alleged defect with the Toaster/Oven on grounds that its admission is prejudicial to Defendant because Plaintiff did not afford Defendant sufficient opportunity to inspect the fire scene and then destroyed the Toaster/Oven and other evidence from the fire scene. Defendant has not demonstrated bad faith on the part of Plaintiff in failing to notify Defendant of the fire or preserve and document the fire scene. Defendant does not dispute that the evidence in this case was not totally destroyed and was available for inspection. Defendant does not dispute

1  that there was photographic documentation of the fire scene for Defendant's inspection. The
2  Court declines to exclude expert testimony concerning any alleged defect with the
3  Toaster/Oven. The Court further concludes that Defendant's request for an adverse inference
4  jury instruction is premature. Plaintiff's Motion in Limine # 3 is DENIED without prejudice.

5       D.    <u>Motion in Limine # 4 - to Exclude Any Opinion Testimony from San Diego Firefighters, Officer Jeffrey A. Carle and Officer Eric D. Kelley</u>

6  Defendant contends that Officer Kelly and Officer Carle should not be permitted to
7  testify at trial as to the origin or cause of the fire in question. Defendant contends that the
8  Officers do not have a sufficient factual basis to testify that the "toaster oven was located
9  within the area of origin since they did not interview Sandy Asch or any other persons who
10 were living at the home at the time of the fire to determine the pre-fire position of the toaster
11 oven or to determine what in fact was located on the kitchen counter top at the time of the
12 fire." *Mot. in Limine # 4,* p. 5-6. Defendant states that since the Officers "did not inspect the
13 fire scene until after the fire suppression efforts of the San Diego Fire Department had been
14 completed, they cannot testify with any certainty that the subject toaster oven was in its
15 original placement, without having the benefit of interviewing the occupants of the home."
16 *Mot. in Limine # 4,* p. 6.

17 Plaintiff states that Officer Kelly and Officer Carle will not be testifying that a defective
18 condition in the Toaster/Oven was the cause of the fire, but rather will be testifying that the fire
19 originated at the Toaster/Oven. Plaintiff contends that based on the Officers' testimony that
20 there was a lot of material consistent with orginary combustibles in the area around the
21 Toaster/Oven, the Officers have factual information to support their opinion that the fire
22 originated in the vicinity of the Toaster/Oven. Plaintiff also contends that Asch had been
23 interviewed by another member of the San Diego Fire Department, and "all pertinent
24 information would have been communicated to officers Kelly and Carle." *Opp. to Dft's Mot.*
25 *in Limine # 4,* p. 4.

26 At oral argument, Plaintiff's counsel stated that the Officers are not going to testify that
27 the Toaster/Oven was the cause of the fire, but rather that in their view, the fire originated in
28 the vicinity of the Toaster/Oven. At oral argument, Defendant's counsel stated that he does

1  not object to Officer Carle and Officer Kelly testifying that in their view, based on their
2  experience and their observations of the burn patterns of the fire and debris in front of the
3  Toaster/Oven, the fire originated in the vicinity of the Toaster/Oven.  After considering the
4  parties' arguments, the Court cannot conclude that the Officers do not have a sufficient factual
5  basis to testify at trial that, in their view, the fire originated in the vicinity of the Toaster/Oven.
6  Defendant's objections go to the weight to be given to the Officers' testimony by the trier of
7  fact.  The Court cannot conclude that the Officers' testimony is so lacking as to render it
8  inadmissible, as opposed to simply worthy of cross-examination.  Plaintiff's Motion in Limine
9  # 3 is DENIED without prejudice.

## CONCLUSION

IT IS HEREBY ORDERED that the (1) Motion in Limine No. One (Doc. # 24) filed by Plaintiff Wawanesa General Insurance Company is **DENIED without prejudice**; (2) Motion in Limine No. Two (Doc. # 25) filed by Plaintiff Wawanesa General Insurance Company is **DENIED without prejudice**; and (3) Cross Motion in Limine Nos. 1-4 (Doc. # 26) filed by Defendant Applica Consumer Products, Inc. are **DENIED without prejudice.**

DATED:  October 23, 2008

                                      */s/ William Q. Hayes*
                                  **WILLIAM Q. HAYES**
                                  United States District Judge